(35 P.3d 283)
No. 84,724

STATE OF KANSAS, *Appellee*, v. WILBUR R. MCELROY, a/k/a WILBERT MCELROY, *Appellant*.

Opinion filed November 30, 2001.

*Peter T. Maharry* and *Brent Getty*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Boyd K. Isherwood* and *Debra S. Peterson*, assistant district attorneys, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GREEN, P.J., KNUDSON, J., and STEPHEN HILL, District Judge, assigned.

GREEN, J.: Wilbur R. McElroy, a/k/a Wilbert McElroy, appeals his conviction and sentence for attempted rape. On appeal, McElroy argues that the trial court erred when it refused to suppress eyewitness identification evidence. McElroy additionally argues that the trial court's imposition of an upward durational departure sentence and an upward departure of his postrelease

supervision was unconstitutional or, alternatively, that the trial court lacked a substantial and compelling reason to impose the departures. We affirm in part, reverse in part, and remand for resentencing.

On June 30, 1999, L.M. was walking behind an apartment building in Wichita, Kansas, when a man standing at the bottom of stairs to a basement laundry room asked her for a cigarette. When L.M. walked down the stairs to give the man a cigarette, he hit her in the face with a blunt object.

L.M. blacked out from the attack. When she regained consciousness, L.M. was naked from the waist down and the man was on top of her. According to L.M., the man raped her for several minutes before she was able to escape.

L.M. ran to the first open apartment door, where she asked a person there, Warren Dean, to help her. When L.M. told Dean that she had been raped by someone, he asked, "Who Wilbur?" Dean then went to the basement to retrieve L.M.'s clothing. The assailant was still in the basement when Dean went down there.

L.M. then went to another apartment to call the police. L.M. described her attacker to the 911 dispatcher as a black male with a mustache and a small or medium Afro. She also stated that he was wearing tan shorts, a white shirt, and blue shoes.

L.M. waited on the scene for the police to arrive. While waiting, L.M. saw the attacker leave the basement and go into one of the other apartments in the building. When the police arrived, they obtained consent to enter that apartment and observed a man matching L.M.'s description of the attacker. The suspect was later determined to be McElroy. When L.M. returned from the basement with officers to retrieve her belongings, she observed McElroy being questioned by police. L.M. spontaneously identified McElroy as the individual who raped her.

McElroy was charged with rape, but convicted by a jury of attempted rape. The trial court imposed an upward durational departure sentence of 102 months on the basis that the crime was sexually motivated and was of extreme sexual violence. The trial court also imposed a postrelease supervision departure of 60 months because McElroy committed attempted rape.

*Eyewitness Identification*

McElroy's first argument on appeal is that the trial court erred in admitting, over his objection, eyewitness identification evidence because the pretrial identification procedure was unnecessarily suggestive. The admission of evidence lies within the sound discretion of the trial court. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

When assessing the validity of eyewitness identification, an appellate court must first determine whether the procedure used in making an identification was unnecessarily suggestive. If it was, then the next issue is whether, under the totality of the circumstances, the impermissibly suggestive identification led to a substantial likelihood of irreparable misidentification, constituting a denial of due process. See *State v. Skelton*, 247 Kan. 34, 39-40, 795 P.2d 349 (1990).

Here, L.M.'s identification of McElroy as her attacker is distinguishable from eyewitness identifications addressed in other cases where the police organized a one-person show-up identification. See, for example, *Skelton*, 247 Kan. 34; *State v. Holloman*, 17 Kan. App. 2d 279, 282, 837 P.2d 826, *rev. denied* 251 Kan. 940 (1992). The police in this case did not present McElroy to L.M. for identification. Instead, L.M. spontaneously identified McElroy as her attacker without prompting from police. Because the police did not organize a show-up procedure to obtain an identification of McElroy as the attacker, the procedure could not have been unnecessarily suggestive.

In any event, even if L.M.'s identification of McElroy as the attacker was the result of a suggestive police procedure, the trial court's admission of the identification evidence was not erroneous. Factors to determine whether an improvident lineup or show-up is violative of due process are:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

The first and second *Biggers* factors examine the opportunity the victim had to view the criminal at the time of the crime and the witness' degree of attention during the attack. Here, L.M. observed McElroy at the base of the stairs and for several minutes while he was attacking her. Although L.M. had been knocked unconscious from the attack, there was no evidence that her judgment or recall was impaired.

The third *Biggers* factor examines the accuracy of the witness' prior description of the criminal. L.M. provided the 911 dispatcher with a detailed description of the attacker. This description matched McElroy.

The fourth *Biggers* factor examines the level of certainty demonstrated by the witness at the confrontation. L.M. testified that at the time of the on-site identification, she was certain McElroy was her attacker.

The final *Biggers* factor examines the length of time between the crime and the confrontation. The record in this case indicates that L.M. spontaneously identified McElroy as her attacker a few minutes after the attack.

In addition to L.M.'s eyewitness identification, Dean, McElroy's roommate, independently identified McElroy as the individual who was in the basement at the time L.M. was attacked.

After careful consideration of the evidence under the factors stated in *Biggers*, we find that even if the identification procedure was unnecessarily suggestive, we cannot say under the totality of the circumstances that there was a very substantial likelihood of irreparable misidentification. As a result, the trial court did not err in admitting eyewitness identification evidence.

## Durational Departure Sentence

McElroy additionally argues the trial court's imposition of a durational departure sentence is unconstitutional.

In *State v. Gould*, 271 Kan. 394, Syl. ¶ 3, 23 P.3d 801 (2001), our Supreme Court held that

"[a]n upward departure sentence imposed on a defendant by a judge under K.S.A. 2000 Supp. 21-4716 is a violation of the defendant's Sixth Amendment rights and Fourteenth Amendment Due Process rights and, thus, is unconsti-

tutional. The Kansas scheme for imposing upward departure sentences, embodied in K.S.A. 2000 Supp. 21-4716, is unconstitutional on its face."

The *Gould* court rationalized that

"[t]he notice and jury trial guarantees of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment require that a factual determination resulting in an increase in the maximum prison sentence for an offense beyond the sentence established in the appropriate grid box under K.S.A. 2000 Supp. 21-4704 be made by a jury beyond a reasonable doubt." 271 Kan. 394, Syl. ¶ 2.

We find that the holding in *Gould* applies to the instant case. As a result, the trial court's imposition of an upward durational departure sentence was unconstitutional and McElroy must be resentenced consistent with *Gould*. In light of this determination, it is unnecessary to address McElroy's contention that the sentencing court's findings of fact justifying an upward durational departure sentence do not constitute a substantial and compelling reason for the departure.

*Postrelease Supervision Departure*

McElroy additionally contends that the trial court erred in imposing an upward departure of his postrelease supervision. Because McElroy had been convicted of a severity level 3 nondrug offense, he was required to serve 36 months on postrelease supervision under K.S.A. 1998 Supp. 22-3717(d)(1)(A). The provision for increasing the term of postrelease supervision was K.S.A. 1998 Supp. 22-3717(d)(1)(C)(i). The statute provides that a postrelease supervision departure may be imposed if "the judge finds substantial and compelling reasons to impose a departure based upon a finding that the current crime of conviction was sexually violent or sexually motivated. In that event, departure may be imposed to extend the postrelease supervision to a period of up to 60 months." As used in the statute, "sexually violent crime" includes attempted rape. K.S.A. 1998 Supp. 22-3717(d)(2)(A) and (K).

An increase in postrelease supervision was recently addressed by this court in *State v. Elms*, No. 85615, filed September 21, 2001

The *Elms* court held that the trial court's imposition of an increased period of postrelease supervision was an unconstitutional durational departure under *Apprendi* and *Gould* because the aggravating facts were not submitted to a jury and proved beyond a reasonable doubt.

Nevertheless, we hold that no error occurs under *Apprendi* and *Gould* where a factual determination is used to increase the period of postrelease supervision beyond the prescribed statutory maximum under K.S.A. 1998 Supp. 22-3717(d)(1)(A), provided that the fact used to exceed the prescribed statutory maximum has been submitted to a jury and proved beyond a reasonable doubt.

The instant case, however, is distinguishable from *Elms* because the aggravating fact was submitted to a jury and proved beyond a reasonable doubt. The trial court imposed 60 months of postrelease supervision because McElroy committed attempted rape. Because the jury convicted McElroy of attempted rape, the fact relied on by the trial court in imposing the increased period of postrelease supervision was submitted to a jury and proved beyond a reasonable doubt. Moreover, we find that McElroy's act of attempted rape constituted a substantial and compelling reason to impose the postrelease supervision departure. As a result, the postrelease supervision portion of McElroy's sentence is affirmed.

The conviction is affirmed; the sentence is affirmed in part and reversed in part, and the case is remanded for resentencing.